UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
M.L. KING, JR.  FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH                                         (973) 645-4693
   BANKRUPTCY JUDGE                                       Fax: (973) 645-2606

**NOT FOR PUBLICATION**

May 14, 2007

**FILED**
JAMES J. WALDRON, CLERK

**MAY 14, 2007**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY:  s/ Ronnie Plasner, DEPUTY

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Duane Morris LLP                              United States Department of Justice
William S. Katchen, Esq.                      Office of the United States Trustee
David H. Stein, Esq.                          Kelly Beaudin Stapleton
Michael F. Hahn, Esq.                         United States Trustee, Region 3
744 Broad Street, Suite 1200                  Donald F. MacMaster, Esq.
Newark, New Jersey 07102                      One Newark Center, Suite 2100
*Proposed Attorneys for the Debtors*                    Newark, New Jersey 07102

Re:   *Rockaway Bedding, Inc.*
      **Case Nos.: 07-14890, 07-14892, 07-14894 through 07-14898 (DHS)**
      **(Jointly Administered)**

Page 2
May 14, 2007

Dear Counsel:

Before the Court is Rockaway Bedding, Inc.'s and it affiliate debtors' (hereinafter "Debtors")[1] contested application for retention of Duane Morris LLP as bankruptcy counsel pursuant to 11 U.S.C. § 327(a) (2007). The Office of the United States Trustee (hereinafter "UST") objected to the retention on account of Duane Morris LLP's previous and ongoing representations of certain of the Debtors' pre-petition creditors, especially PNC Bank. By way of reply and further disclosure, Duane Morris LLP filed three supplemental affidavits and a brief in support of retention.

For the reasons that follow, the application for retention is hereby granted. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 (2007) and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (2007). Venue is proper under 28 U.S.C. §§ 1408 and 1409 (2007).

The major point of contention turns on Duane Morris LLP's ongoing relationships with pre-petition creditors, especially PNC Bank given its role in these proceedings. PNC Bank acted as the Debtors' pre-petition lender and their largest secured creditor with a claim of $3,424,019.48 secured by a blanket lien on substantially all the Debtors' assets as of the petition date. In addition, Duane Morris LLP negotiated two cash collateral Orders with PNC Bank on behalf of the Debtors. The cash collateral Orders provide PNC Bank with a replacement lien on substantially all of the Debtors' pre- and post-petition assets, as well as post-petition accounts receivable and inventory,

---

[1] The Debtors consist of Rockaway Bedding, Inc., and its wholly owned subsidiaries: (1) Rockaway Bedding Centers of New York, Inc.; (2) Rockaway Bedding of Pennsylvania, Inc.; (3) Rockaway Bedding of Maryland, Inc.; (4) Rockaway Bedding of Delaware, Inc.; (5) Rockaway Bedding of Connecticut, Inc.; and (6) Rockaway Bedding of 48th Street, Inc.

Page 3
May 14, 2007

allow for a superpriority administrative expense claim to the extent of diminution in value of the

collateral, and payments of principal and interest in the sixteen (16) weeks after the petition date.


      Potential conflicts of interest exist.  These include the fact that revenue generated in

representation of PNC Bank constituted .68% of Duane Morris LLP's gross revenues in 2006.  In

addition, William S. Katchen, one of the proposed counselors to the Debtors and a member of the

Creditors Rights and Insolvency Practice Group of Duane Morris LLP, maintains a personal account

at PNC Bank.  Duane Morris LLP also employs over 1,300 other individuals who may maintain

similar personal accounts.  Finally, the spouse of a member in Duane Morris LLP's Newark, New

Jersey office recently retired from her position with an entity affiliated with PNC Bank.  The gross

revenues generated in 2006 by Duane Morris LLP in representation of other pre-petition creditors

did not exceed .5% for any creditor.  Duane Morris also represented Meyer Potamkin in connection

with a property located on Cottman Avenue in Philadelphia, Pennsylvania.  The Debtors lease

property from Mr. Potamkin at that location.  As to all creditors in issue except PNC Bank, Duane

Morris LLP disclosed that it, its affiliate businesses, or its employees were either in the process of

providing or had previously provided services or representation unrelated to the Debtors or their

bankruptcy cases.

      Duane Morris LLP seeks to resolve any possible conflict as follows.  First, PNC Bank has

executed a conflicts waiver to which the Debtors also consented.[2]  The PNC Bank conflicts waiver

states that Duane Morris LLP professionals will provide the Debtors with services as bankruptcy

---

[2] The Court has reviewed the PNC Bank conflicts waiver *in camera* and finds that its form is consistent
with the requirements of New Jersey Rule of Professional Conduct 1.7.

Page 4
May 14, 2007

counsel.  Professionals providing services to the Debtors are not permitted to work concurrently on

unrelated PNC Bank matters.  The only exception to the waiver is that Duane Morris LLP agreed

not to assert any claim of fraud, misrepresentation or dishonest conduct against PNC Bank in

connection with the Debtors' Chapter 11 proceedings.  If such a situation should arise, Duane Morris

LLP proposes to retain separate conflicts counsel to pursue such claims or allow the Official

Committee of Unsecured Creditors to assert such claims on the Debtors' behalf.  In the event that

a dispute arises between the Debtors and Mr. Potamkin, all parties will be represented by counsel

other than Duane Morris LLP.

Further, the ongoing unrelated representations of PNC Bank are handled by Duane Morris

LLP professionals outside the Newark, New Jersey office while the Debtors' Chapter 11

proceedings will be administered by professionals within that office.  Duane Morris LLP has

established an ethical wall on its firm-wide computed system which separates its professionals who

have, are, or will perform unrelated services for PNC Bank from Duane Morris LLP professionals

in the Newark, New Jersey office and insures against possible disclosure of privileged or

confidential information.

In support of retention, Duane Morris LLP filed the affidavits of Edwin N. Ordway, Jr., the

managing member of Capstone Advisory Group, financial advisors to the Debtors, and Brian Mason,

partner in the law firm of Nuzzi & Mason, who acts as outside general counsel to the Debtors.  Both

affidavits serve to inform the Court that in the course of these short bankruptcy proceedings, Duane

Morris LLP has already undertaken zealous representation of the Debtors' interests and that the

Page 5
May 14, 2007


introduction of replacement bankruptcy counsel would lead to irreparable injury to the Debtors'

reorganization efforts as well as prejudice its creditors to that effect.

The Official Committee of Unsecured Creditors in this jointly administered Chapter 11 does

not object to the retention of Duane Morris LLP.  However, the UST proffers that Duane Morris

LLP's relationships with PNC Bank warrant disqualification as Debtors' counsel.

The Debtors seek authorization to retain Duane Morris LLP as bankruptcy counsel under

Section 327(a).[3]

> Except as otherwise provided in this section, the trustee, with the
> court's approval, may employ one or more attorneys, accountants,
> appraisers, auctioneers, or other professional persons, that do not hold
> or represent an interest adverse to the estate, and that are disinterested
> persons, to represent or assist the trustee in carrying out the trustee's
> duties under [the Bankruptcy Code].

11 U.S.C. § 327(a) (2007).

"Disinterested person" is a term of art defined in Section 101(14) of the Bankruptcy Code.

A disinterested person:

> (A)   is not a creditor, an equity security holder, or an insider;
> (B)   is not and was not, within 2 years before the date of the filing
>        of the petition, a director, officer, or employee of the debtor;
>        and
> (C)   does not have an interest materially adverse to the interest of
>        the estate or of any class of creditors or equity security
>        holders, by reason of any direct or indirect relationship to,
>        connection with, or interest in, the debtor, or for any other
>        reason.

---

[3] No allegation is leveled that Duane Morris LLP failed to make the disclosures required for the employment of professionals pursuant to Federal Rule of Bankruptcy Procedure 2014.

Page 6
May 14, 2007

11 U.S.C. § 101(14) (2007).

While the overlap of Sections 327(a) and 101(14) is well recognized, the Bankruptcy Code

also specifically addresses the situation at hand in Section 327(c).

> In a case under chapter 7, 12, or 11 of this title, a person is not
> disqualified for employment under this section solely because of such
> person's employment by or representation of a creditor, unless there
> is objection by another creditor or the United States trustee, in which
> case the court shall disapprove such employment if there is an actual
> conflict of interest.

11 U.S.C. § 327(c) (2007). Section 327(c) makes clear that proposed counsel cannot be disqualified

solely because of the representation of a creditor unless an objection is raised by the UST and an

actual conflict of interest is found to exist.

In this context, the holding of *In re Marvel Entm't Group, Inc.*, 140 F.3d 463 (3d Cir. 1998)

is controlling.

> (1) Section 327(a), as well as § 327(c), imposes a *per se*
> disqualification as trustee's counsel of any attorney who has an actual
> conflict of interest; (2) the district court may within its discretion --
> pursuant to § 327(a) and consistent with § 327(c) -- disqualify an
> attorney who has a potential conflict of interest and (3) the district
> court may not disqualify an attorney on the appearance of conflict
> alone.

*Id.* at 476.

The Court in *In re Marvel Entm't Group, Inc.* recognized an exception to disqualification

in light of a potential conflict "where the possibility that the potential conflict will become actual

Page 7
May 14, 2007

is remote, and the reasons for employing the professional in question are particularly compelling."

*Id.* (citation omitted).  This determination rests within the sound discretion of the bankruptcy court

and is made pursuant to the facts and circumstances of each case.  *See id.* (quoting *BH&P, Inc.*, 949

F.2d 1300, 1316-17 (3d Cir. 1991); *Staiano v. Pillowtex, Inc. (In re Pillowtex, Inc.)*, 304 F.3d 246,

254 (3d Cir. 2002) (quoting *BH&P, Inc.*, 949 F.2d at 1316 (other citation omitted)).

It is evident that, at the time of the application and now, no actual conflict of interest exists

to deny the Debtors' application to retain Duane Morris LLP under Section 327(a).  The Debtors are

not in any active litigation against PNC Bank or any other creditor for which an unrelated

connection was disclosed and the Court is advised that no such litigation is envisioned.  The

affidavits of Messrs. Ordway and Mason make clear that Duane Morris LLP has zealously

represented the Debtors' interests against PNC Bank in negotiating two cash collateral Orders.

These affidavits also provide that the effect of a replacement of bankruptcy counsel on the Debtors

would be, in their view, irreparable at this juncture given that the Debtors are in the midst of

downsizing their operations in an effort to stabilize their business model and return to profitability.

Coupled with this inherent vulnerability is the ripple effect of prejudice to creditors.  PNC Bank

represented less than 1% of Duane Morris LLP's 2006 annual gross revenue.  Most significantly,

PNC Bank and the Debtors executed a conflicts waiver which specifically provides for independent

representation of matters relating to fraud or misrepresentation, none of which have been raised.

In this regard, the Creditors' Committee counsel stands ready to pursue such actions should their

investigation reveal actionable conduct.

Page 8
May 14, 2007

Lastly, this Court is presented with no evidence of an actual conflict of interest.  The UST

cites *In re Leslie Fay Cos., Inc.*, "where the court held that the debtor[s'] law firm was adverse to

the debtor[s] because of the firm's representation on unrelated matters of firms of which outside

directors were principals, when the [outside] directors were potential targets in litigation by the

debtors." *Letter Objection of the UST*, p. 4 (citing *In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 535

(Bankr. S.D.N.Y. 1994)).  Certainly, here there is no suggestion that the Debtors' directors would

be potential targets of litigation.  In addition, the Court is advised that there exists no active litigation

between the Debtors and creditors and that no such litigation is currently envisioned.

The issue then becomes whether, under the particular circumstances and facts of this case,

the potential for a conflict of  interest is remote and there exist reasons for retaining Duane Morris

LLP.  Here, there are no ongoing litigations related to the Debtors and PNC Bank nor are such

actions are envisioned.  Duane Morris LLP has aggressively negotiated with PNC Bank and the

Creditors' Committee in protecting the Debtors' rights during the proceeding.  To ensure protection

against conflicts, it has instituted an electronic ethical wall to isolate its Newark, New Jersey

professionals in relation to these proceedings.  Duane Morris LLP has also recognized its ongoing

duty to disclose any potential or actual conflict as it arises.

All representations of PNC Bank are conducted outside the Newark, New Jersey office while

the Debtors' bankruptcy proceedings will be handled by that office alone and PNC Bank has

executed a conflicts waiver acceptable to the Debtors.  Professionals working on unrelated PNC

Bank matters are precluded from handling the instant proceedings.  Matters relating to

misrepresentations and fraud are carved out of the waiver and will be assigned to either conflicts

Page 9
May 14, 2007

counsel or the Official Committee of Unsecured Creditors to prosecute on the Debtors' behalf.

Duane Morris LLP has acted with speed and diligence since the outset of these proceedings and in disclosing what is presumably any and all known potential conflicts to date. No other potential conflicts have been presented to the Court. On the other hand, the Court has before it the affidavits of Rockaway Bedding, Inc.'s own outside general counsel and financial consultant as a testament to the professional nature and quality of Duane Morris LLP's representation, the effectiveness of its efforts to date, and the alleged irreparable injury that would befall the Debtors in requiring replacement counsel. Finally, the Official Committee of Unsecured Creditors has reviewed the retention and consented to Duane Morris LLP's representation.

This Court notes that it recently granted a motion to authorize the sale of inventory and leases from the Debtors' chain of retail stores to effectuate the Debtors' hope of consolidating to a core business and returning to profitability. It is evident that the Debtors are in a fragile economic state and that a delay or disruption in their attempts to downsize could result in the implosion of their efforts to reorganize as a going concern. Lastly, Duane Morris LLP has negotiated the outcome of several motions in these proceedings, including two cash collateral Orders, and has become intimately familiar with the Debtors' industry, business, operations and creditors.[4]

For the foregoing reasons, this Court believes that no more than a remote potential conflict can be found at this point and that compelling reasons exist to authorize Duane Morris LLP's

---

[4] This Court notes that Duane Morris LLP received pre-petition payments totaling $111,000 as a retainer for prospective services including the filing of the bankruptcy petitions and representation of the Debtors in their ongoing bankruptcy proceedings. These payments cannot constitute avoidable preferential transfers as they were not made on account of an antecedent debt. *See* 11 U.S.C. 547(b)(2) (2007). Therefore, Duane Morris LLP's representation is not barred by the existence of avoidable preferential transfers. *See generally In re Pillowtex, Inc.*, 304 F.3d at 246.

Page 10
May 14, 2007


representation.  Given the prophylactic provisions in place, this Court also believes that Duane

Morris LLP's representation is in accordance with New Jersey Rule of Professional Conduct 1.7.[5]

This Court hereby grants the Debtors' application to retain Duane Morris LLP as their bankruptcy

counsel pursuant to Section 327(a) of the Bankruptcy Code.

---

[5] New Jersey Rule of Professional Conduct 1.7 states that:

(a)     Except as provided in paragraph (b), a lawyer shall not represent a client
        if the representation involves a concurrent conflict of interest. A
        concurrent conflict of interest exists if:
        (1)     the representation of one client will be directly adverse to
                another client; or
        (2)     there is a significant risk that the representation of one or more
                clients will be materially limited by the lawyer's responsibilities
                to another client, a former client, or a third person or by a
                personal interest of the lawyer.
(b)     Notwithstanding the existence of a concurrent conflict of interest under
        paragraph (a), a lawyer may represent a client if:
        (1)     each affected client gives informed consent, confirmed in
                writing, after full disclosure and consultation, provided, however,
                that a public entity cannot consent to any such representation.
                When the lawyer represents multiple clients in a single matter,
                the consultation shall include an explanation of the common
                representation and the advantages and risks involved;
        (2)     the lawyer reasonably believes that the lawyer will be able to
                provide competent and diligent representation to each affected
                client;
        (3)     the representation is not prohibited by law; and
        (4)     the representation does not involve the assertion of a claim by
                one client against another client represented by the lawyer in the
                same litigation or other proceeding before a tribunal.

N.J. RULES OF PROF'L CONDUCT R. 1.7 (2007).

Page 11
May 14, 2007


An Order in conformance with this Opinion has been entered by the Court and a copy is

attached hereto.

Very truly yours,

*/s / Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure