# UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY

M.L. KING, JR. FEDERAL BUILDING

50 WALNUT ST., 3RD FLOOR

NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH

BANKRUPTCY JUDGE

(973) 645-4693

Fax: (973) 645-2606

**NOT FOR PUBLICATION**

```
FILED
JAMES J. WALDRON, CLERK
JUNE 30, 2011
U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY
```

June 30, 2011

**LETTER OPINION**

**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Alan L. Frank Law Associates, P.C.
Alan L. Frank, Esq.
8380 Old York Road
Suite 410
Elkins Park, Pennsylvania 19027
*Counsel for Edward T. Gavin, Plan Trustee*

Duane Morris LLP
William S. Katchen, Esq.
744 Broad Street
Newark, New Jersey 07102
*Counsel for Duane Morris LLP,*
*Administrative Claimant and Respondent*

Hahn & Hessen LLP
Steven J. Mandelsberg, Esq. (*pro hac vice*)
488 Madison Avenue
New York, New York 10022
*Counsel for Capstone Advisory Group LLC,*
*Administrative Claimant and Respondent*

Nuzzi & Mason LLC
Brian W. Mason, Esq.
50 Nelson Street
Dover, New Jersey 07801
*Counsel for Nuzzi & Mason LLC,*
*Administrative Claimant and Respondent*

**Re:    In re Rockaway Bedding, Inc. et al.**
    **Case No. 07-14890 (DHS) (Jointly Administered)**

Page 2
June 30, 2011

Dear Counsel:

      Edward T. Gavin, the Post-Confirmation Plan Trustee ("Plan Trustee"), is before the Court on a motion to compel the respondents, Duane Morris LLP ("DM"), Capstone Advisory Group, LLC ("Capstone") and Nuzzi & Mason, LLC ("NM") (collectively, "Respondents"), to disgorge fees previously received, pursuant to a Consent Order entered by the Court on October 16, 2008 ("Consent Order"). The Plan Trustee argues that disgorgement is necessary in order to ensure that all chapter 11 administrative claimants are paid on a *pro rata* basis, in alleged accordance with the confirmed Plan of Liquidation ("Plan").

      The Respondents oppose the motion on the basis that: (1) the Consent Order was a final order, not subject to disgorgement; (2) the Plan Trustee has not satisfied the requirements for relief from a final order pursuant to Federal Rule of Bankruptcy Procedure 9024, which incorporates Federal Rule of Civil Procedure 60(b); and (3) the doctrines of *res judicata*, judicial estoppel, and equitable estoppel otherwise preclude reconsideration of the Consent Order.[1]

      For the reasons that follow, the motion is denied. The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(a)-(b), 157(b)(1), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. The matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## **FACTS AND PROCEDURAL HISTORY**

      The Debtor, Rockaway Bedding, Inc., and its affiliated debtors[2] (collectively "Debtors") filed voluntary petitions under chapter 11 on April 9, 2007. The Court approved the Debtors' retention of DM as general bankruptcy counsel, Capstone as financial consultants, and NM as

---

[1] The Respondents also question the Court's post-confirmation jurisdiction on the basis that redistribution of fees among professionals does not impact creditors of the estate and lacks a sufficient nexus to the Plan. (Joint Obj. of DM, Capstone and NM, ¶ 48) ("Joint Obj.") However, this is a core proceeding "arising in" a bankruptcy case because the Plan Trustee seeks redistribution based on the provisions of the Plan. Therefore, the Court has jurisdiction to resolve the dispute. *See Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.),* 505 F.3d 237, 257 n18 (3d Cir. 2007) (". . . a finding that the case "aris[es] in" the bankruptcy would "kill two birds with one stone" inasmuch as such a finding conclusively would establish both subject matter jurisdiction and the bankruptcy court's authority to enter final orders."). In any event, the Court expressly retained jurisdiction "to hear any matters or disputes arising from or relating to" the Consent Order that awarded "final compensation" to the Respondents. *See* Consent Order, ¶ 32, [ECF Docket No. 1859] ("Consent Order").

[2] The affiliated debtors include: Rockaway Bedding Centers of New York, Inc., Rockaway Bedding of Pennsylvania, Inc., Rockaway Bedding of Maryland, Inc., Rockaway Bedding of Delaware, Inc., Rockaway Bedding of Connecticut, Inc., and Rockaway Bedding of 48th Street, Inc. The cases are jointly administered.

Page 3
June 30, 2011

special counsel.  On May 19, 2008, the Court confirmed the Debtors' Joint Plan of Orderly Liquidation ("Plan").  Pursuant to the Plan, Mr. Gavin was appointed the Plan Trustee for the Post Confirmation Trust created thereunder.  The Plan treated the Respondents as Allowed Administrative Claimants and provided that they were to be compensated on a *pro rata* basis from recoveries until paid in full.  (Plan, Art. II, Sec. C, part 1) In the event the case was converted to chapter 7 after confirmation, the Plan provided that all estate property "that *had not been disbursed* pursuant to the Plan" would re-vest in the chapter 7 estate. (*Id.* at Art. III, Sec. I (emphasis added))  Furthermore, "any Allowed Claims for Administrative Expenses *which are not paid* on the Effective Date, and those Post-Effective Date Fees *which are not paid* prior to conversion, shall continue to be entitled to administrative priority. . ." (*Id.* (emphasis added))  At the time of confirmation, the estate was administratively insolvent.  (Decl. of Edward T. Gavin, ¶ 2) ("Gavin Decl.")

Following confirmation, the Respondents filed final fee applications requesting the following compensation:

>  (1) for DM, approval of $1,984,156.90 in fees and expenses over the duration of its service periods;
>
>  (2) for Capstone, approval of $1,644,357.82 in fees and expenses over the duration of its service periods; and
>
>  (3) for NM, approval of $147,285.00 in fees over the duration of its service periods and no reimbursement of expenses.

The Plan Trustee advised the Respondents that he intended to object to their respective applications.   Thereafter, the parties engaged in extensive negotiations culminating, on October 16, 2008, in a Consent Order granting "allowed . . . final compensation for services rendered" and acknowledging prior receipt by the Respondents of sums certain "as full and final satisfaction" of the allowed fees.  (Consent Order Resolving Any Objections and Allowing Interim and Final Fee Applications [ ], "Resolution of the Trustee's Objections", ¶¶ 22-30) ("Consent Order")  The final allowed compensation was as follows:

>  (1) for DM, $1,563,484.20 in fees and expenses;
>
>  (2) for Capstone, $1,298,824.10 in fees and expenses; and
>
>  (3) for NM, $116,067.00 in fees.

*Id.*

Page 4
June 30, 2011

In recognition of the estate's administrative insolvency and the total funds presently available for distribution, the Plan Trustee has concluded that each chapter 11 Administrative Claimant should receive 79.43% of its "allowed" claim, in accordance with the *pro rata* distribution scheme provided for in the Plan. (Gavin Decl., ¶ 3) He asserts that disgorgement is the only way to achieve this outcome and, because the Consent Order does not expressly bar disgorgement, it is implicitly provided for in both the Consent Order and the Plan. Therefore, he seeks to disgorge $299,531.82 from DM, $254,489.57 from Capstone, and $22,127.92 from NM, respectively. (*Id*. at ¶ 7) He argues that the Court has inherent authority, as well as equitable power under 11 U.S.C. § 105(a), to order the reallocation of payments so as to enforce the provisions of the Plan. (Plan Trustee's Mot. for an Order Requiring Disgorgement of Fees, p. 2) ("Plan Trustee's Mot.")

The Plan Trustee notes that each of the Respondents has already received over 98% of its respective allowed claim and that disgorgement is appropriate to ensure the Respondents are not paid in excess of other similarly situated creditors. (Gavin Decl., at ¶ 8) Conversely, the Respondents argue that the Plan Trustee should not be permitted to use the "allowed fees" in the Consent Order as a sword to force disgorgement. (Joint. Obj., ¶ 8) They note their collective decision to forego over $800,000 in combined requested fees as consideration for the resolution of the Plan Trustee's objections. (*Id.*) If the present motion is granted, the Respondents will realize a distribution of only 61-64%, respectively, of their total requested fees in the case. (*Id.* n1) The Respondents argue that such a result is clearly inequitable in light of, among other reasons, the 79.43% distribution the Plan Trustee proposes for the other Administrative Claimants.

## DISCUSSION

I.   **Professional Fees in Bankruptcy**

   A.   **Fee Awards and Disgorgement Generally**

Pursuant to 11 U.S.C. §§ 330 and 331, a bankruptcy court may award reasonable compensation and reimbursement for expenses, as well as interim payments, to professionals employed pursuant to sections 327 or 1103 of the Bankruptcy Code. Section 330(a)(5) specifically permits a court to order disgorgement of interim payments received under section 331, to the extent that they exceed the ultimate amount awarded under section 330. 11 U.S.C. § 330(a)(5). Thus, interim awards to professionals are always "subject to re-examination and adjustment" and no professional may claim to be unaware of the inherent risk of disgorgement. *In re St. Joseph Cleaners, Inc.,* 346 B.R. 430 (Bankr. W.D. Mich. 2006) (quoting *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659, 663 (6th Cir. 2004) ("*Specker Motors II"*); *see also* 11 U.S.C. § 330(a)(2) ("The court may, on its own motion or on the motion of the United States Trustee . . . the trustee for the estate, or any other party in interest, award compensation that is less than the

Page 5
June 30, 2011

amount of compensation that is requested."). It is a fact of life among bankruptcy professionals, and well-chronicled in existing case law, that professionals employed in bankruptcy cases "provide services and accept interim compensation at their own peril." *Ungaretti & Harris, LLP v. Steinberg (In re Resource Tech. Corp.)*, 2008 U.S. Dist. LEXIS 84907 (N.D. Ill. Oct. 20, 2008) (citing *Matz v. Hoseman*, 197 B.R. 635, 640 (N.D. Ill. 1996); *In re Kids Creek Partners, L.P.*, 236 B.R. 871, 875-78 (Bankr. N.D. Ill. 1999)); *see also, e.g., Shaia v. Durrette, Irvin, Lemons & Bradshaw, P.C. (In re Metropolitan Elec. Supply Corp.)*, 185 B.R. 505, 509 (Bankr. E.D. Va. 1995); *Guinee v. Toombs (In re Kearing)*, 170 Bankr. 1, 7-8 (Bankr. D.D.C. 1994). Even in the absence of objections, courts have an independent duty to review fee applications for necessity and reasonableness under section 330(a). *See, e.g.*, *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 841 (3d Cir. 1994).

### B. Interim versus Final Compensation

Although it is well established that interim fees are always subject to disgorgement, the issue of whether a court may order disgorgement of final fees is less settled. The Court's research has turned up only one reported decision holding that final fee awards are not subject to disgorgement specifically because of their "final" status. *See St. Joseph Cleaners,* 346 B.R. 430. However, several cases, including some cited by the Plan Trustee in support of disgorgement, either explicitly note the difference between interim and final fee awards or focus solely on interim awards. *See, e.g., In re Hyman Freightways, Inc.*, 2006 U.S. Dist. LEXIS 92206, at *8 (D. Minn. Dec. 20, 2006) ("[d]isgorgement of interim professional compensation is a matter of discretion"); *Specker Motor Sales Co. v. Eisen*, 300 B.R. 687, 690 (Bankr. W.D. Mich. 2003), *aff'd*, 393 F.3d 659 (6th Cir. 2004) ("*Specker Motors I*") ("interim payments are not final"); *In re Kids Creek Partners, L.P.*, 236 B.R. 871, 875-78 (Bankr. N.D. Ill. 1999) ("[a]wards of interim attorneys' fees and expenses are not final and can be revisited at any time. . ."); *In re Lochmiller Indus., Inc.,* 178 B.R. 241 (S.D. Cal. 1995) (court may order disgorgement of fees paid as interim compensation under section 331). Moreover, *Specker Motors I* implicitly stated that final fee awards are not subject to disgorgement. *Specker Motors I*, 300 B.R. at 690 ("Were these payments final, §§ 330 and 331 would be given no effect as the court would be denied the opportunity to correct excessive compensation . . .").

On appeal in *Specker Motors II*, the Sixth Circuit addressed the narrow issue of whether a retainer paid to the debtor's counsel during the chapter 11 case remained property of the estate and subject to disgorgement in order to achieve *pro rata* distribution among claimants at the same priority level, as mandated by section 726(b), after the case was converted to chapter 7. *Specker Motors II*, 393 F.3d at 661-63. Although the attorney's fee application was a "final application," the Sixth Circuit was clear to point out that the bankruptcy court, in granting the final fee award, nevertheless designated the retainer as "interim compensation" because the liquidation was ongoing and the attorney was continuing to represent the debtor. *Id.* at 661. Shortly thereafter, the chapter 7 trustee filed his final report and accounting, which revealed that the estate was insolvent. *Id.* Thus, the court granted the trustee's motion to compel the debtor's

Page 6
June 30, 2011

attorney to disgorge a portion of the retainer so as to achieve a *pro rata* distribution among the five administrative claims. *Id.* The Sixth Circuit upheld the lower court and concluded that disgorgement was mandatory because of the unambiguous language of section 726(b). *Id.* at 662.

Whereas the *Specker Motors* cases resulted in court-ordered disgorgement, the present case is distinguishable because the fees awarded were the result of a negotiated agreement between the Respondents and the Plan Trustee, in return for a resolution of the Plan Trustee's objections. The fee awards were never designated as interim compensation. The Consent Order clearly designates the compensation received by the Respondents as "full and final satisfaction of the allowed fees" rather than "interim" payments as noted in *Specker Motors*. Thus, as final payments, the awards are not subject to disgorgement under section 330(a)(5). *See St. Joseph Cleaners,* 346 B.R. 430; *Specker Motors I*, 300 B.R. at 690.

Of course, a final fee award is like any other final order in that it remains subject to vacatur or modification under Federal Rule of Civil Procedure 60. Here, the Consent Order, reflecting a compromise and settlement pursuant to Federal Rule of Bankruptcy Procedure 9019, is a final order, and, as such, the Plan Trustee must satisfy the requirements of Federal Rule of Bankruptcy Procedure 9024, which incorporates Rule 60, in order to obtain relief.

## II.     Relief from an Order under Federal Rule of Civil Procedure 60

The Plan Trustee's motion is based entirely on the central principal of equality of distribution among creditors of equal priority, *see Begier v. I.R.S.*, 496 U.S. 53, 58, 110 S. Ct. 2258; 110 L. Ed. 2d 46 (1990), and on his interpretation of the Plan's distribution scheme. He does not attempt to set forth any basis under Rule 60 to enter relief from the Consent Order. Nevertheless, the Court will address the issue *sua sponte*.[3]

Rule 60(b) provides the standard for obtaining relief from a final judgment or order. Relief may be granted for the following reasons: (1) mistake or excusable neglect; (2) newly discovered evidence that could not have been discovered earlier by due diligence; (3) fraud or misrepresentation; (4) the judgment is void; (5) the judgment was satisfied, released, or

---

[3] The Circuits are divided on whether a court may grant *sua sponte* relief under Rule 60(b). The prevailing view is that *sua sponte* relief is permissible. *See Fort Knox Music, Inc. v. Baptiste,* 257 F.3d 108, 111 (2d Cir. 2001) (permitted); *Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 351 (9th Cir. 1999) (same); *McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962) (same); *U.S. v. Jacobs*, 298 F.2d 469, 472 (4th Cir. 1961) (same); *but see U.S. v. Pauley*, 321 F.3d 578, 582 (6th Cir. 2003) (not permitted); *Dow v. Baird*, 389 F.2d 882, 884-85 (10th Cir. 1968) (same). The Third Circuit has yet to address the issue. However, two recent district court opinions and one recent bankruptcy court opinion concluded that the prevailing view is correct and *sua sponte* relief is appropriate. *Firstline Nat'l Ins. Co. v. Secret Garden Landscaping,* 2009 U.S. Dist. LEXIS 71706 (D.N.J. Aug. 5, 2009); *Dunkin' Donuts, Inc. v. Arkay Donuts, LLC*, 2006 U.S. Dist. LEXIS 58490 (D.N.J. Aug. 21, 2006); *Walsh v. Bracken (In re Davitch)*, 336 B.R. 241, 253 (Bankr. W.D. Pa. 2006). This Court agrees with that holding.

Page 7
June 30, 2011

discharged; or (6) the interests of justice. Fed. R. Civ. P. 60(b). Relief under Rule 60(b)(6) is a "catch-all" provision and mutually exclusive of subsections (b)(1)-(5). *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n11, 108 S. Ct. 2194, 100 L. Ed. 2d (1988). It may not be used if the reason for which relief is sought generally fits within one of the other enumerated categories but fails to meet the prerequisites for relief thereunder. *Id.*

The Rule requires that motions for relief must be made within a "reasonable" time. However, for subsections (b)(1)-(3), motions must be made within one year after the final judgment or order was entered. Moreover, the one-year time limits in Rule 60(b) are absolute and cannot be extended by the courts. *See* Fed. R. Civ. P. 6(b). Therefore, it follows that *sua sponte* relief must also adhere to the one-year time limit.

Here, more than one year has passed since the entry of the Consent Order. Therefore, relief under subsections (b)(1)-(3) is time barred. Subsections (b)(4) and (5) are simply inapplicable to the present facts. Thus, the only potential avenue for relief is via Rule 60(b)(6). "To justify relief under subsection (b)(6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 393, 113 S. Ct. 1489; 123 L. Ed. 2d 74 (1993). Putting aside any question as to whether the lengthy delay in seeking relief from the time of the entry of the Consent Order was reasonable, the Court does not find that the interests of justice require the Plan Trustee to be relieved from a negotiated settlement he voluntarily undertook. The Plan Trustee was aware of the administrative insolvency at the time of the Consent Order, yet he agreed to its terms, which included a resolution of any objections to the Respondents' fees. Therefore, relief under Rule 60(b)(6) is unavailable.

Alternatively, Rule 60(d) provides that Rule 60 does not limit a "[C]ourt's power to entertain an independent action to relieve a party from a judgment [or] order." Fed. R. Civ. P. 60(d)(1). However, circumstances warranting relief under this subsection are even more limited than under Rule 60(b)(6). *See United States v. Beggerly,* 524 U.S. 38; 118 S. Ct. 1862; 141 L. Ed. 2d 32 (1998) ("an independent action should be available only to prevent a grave miscarriage of justice"). "[I]n determining whether to entertain independent actions for relief," courts must exercise their discretion and be guided by "traditional equitable principles." *LinkCo, Inc. v. Naoyuki Akikusa*, 615 F. Supp. 2d 130, 134 (S.D.N.Y. 2009) (quoting *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,* 117 F.3d 655, 661 (2d Cir. 1997)). The Court finds that relief is not appropriate under Rule 60(d)(1) for the same reasons that it is not available under Rule 60(b)(6).

### III.    Equitable Considerations

Even if the Consent Order were not final, as suggested by the Plan Trustee, the Court would still deny the motion based on the equities of this particular case. *See In re Jeffrey S. Anolik*, 207 B.R. 34, 39 (Bankr. D. Mass. 1997); *Ungaretti*, 2008 U.S. Dist. LEXIS 84907 at *12-13. Here, the Trustee negotiated the Consent Order, and the Court approved it pursuant to

Page 8
June 30, 2011

Rule 9019, on the basis that it was in the best interests of the creditors. At that time, the Respondents believed they were bargaining for a final order. In exchange for a resolution of the Plan Trustee's objections, they relinquished more than $800,000 in combined requested fees to the estate. The Plan Trustee thought such a substantial reduction was a resolution in the best interests of the creditors. Now, the Plan Trustee's proposed distribution percentage does not take this reduction into account, nor the extensive negotiations which led to the reductions.

Moreover, neither the Consent Order nor the Plan expressly stated that the fees received by the Respondents were subject to disgorgement. Unlike the example of interim fees, which are always subject to disgorgement by virtue of section 330(a)(5), the Respondents would have required express notice that payments received "as full and final satisfaction" of allowed fees remained subject to further reduction. The Plan Trustee knew about the insolvency issues at the time the Consent Order was negotiated, yet did not expressly carve out a claw-back right if such action later became necessary to achieve *pro rata* distribution. At oral argument, the Plan Trustee's counsel asserted that disgorgement was implied because nothing in the Consent Order barred disgorgement and the Respondents knew it was a possibility. However, the Respondents argue to the contrary and a review of the Plan provisions reveals that, upon a subsequent conversion of the case to chapter 7, the trustee would be barred from seeking disgorgement. (Plan, p. 39, Sec. I) This contemplated result does not square with the Plan Trustee's assertion that disgorgement was implicit in the Consent Order and Plan.

In *Schwab v. United States, IRS (In re Shop N' Go P'ship),* a case from the Middle District of Pennsylvania, the court dealt with a similar situation wherein the movant sought disgorgement of payments made pursuant to a settlement agreement. *Schwab v. United States, IRS (In re Shop N' Go P'ship),* 261 B.R. 810 (Bankr. M.D. Pa. 2001). In that case, the settlement was on account of pre-petition tax obligations. *Id.* Nevertheless, the court discussed its decision not to grant the trustee's disgorgement motion[4] in the context of *Lochmiller* and other cases dealing with disgorgement of professional fees:

> The court in *In re Lochmiller* disgorged payments made to professionals pursuant to an interim order. *In re Lochmiller Indust.*, 178 B.R. 241 (Bankr. S.D. Ca. 1995). Since the payments in . . . *Lochmiller* were pursuant to an interim order, or subject to further review, it is foreseeable that a recipient of such a payment may have to return those funds." *Lochmiller*, 178 B.R. at 252 (citing *In re Kearing*, 170 B.R. 1, 6-7 (Bankr. D.D.C. 1994)). The

---

[4] The trustee sought disgorgement from the Internal Revenue Service on the basis that the settlement "was made fraudulently, was inconsistent with the Chapter 11 Reorganization Plan and the Bankruptcy Code, and was a violation of the Debtor's . . . fiduciary duty to its creditors." *Schwab*, 261 B.R. at 811. The court, in denying the relief sought, noted that, in hindsight, it was easy to argue that the settlement was a bad deal. *Id. at 810.* At the time it was approved, however, the settlement was not objected to and was deemed to be in the best interests of the creditors and the estate. *Id.*

Page 9
June 30, 2011

> case at hand is not dealing with unauthorized or interim payments to professionals. Rather, the payment in question was made pursuant to a settlement agreement with court approval. Thus, disbursements made with court approval should not be disgorged because such payment does not subvert the Code's requirements.
>
> . . .
>
> In the absence of an application of Rule 60(b), policy considerations weigh heavily in favor of honoring the settlement agreement. Expectation of the parties that entered into the settlement agreement should be upheld. If not, neither the IRS nor the DIP would have entered into the agreement and there would exist a chilling effect on all future settlement agreements." *In re Anolik*, 207 B.R. 34 (Bankr. D. Mass. 1997); *In re Unitcast, Inc.,* 219 B.R. 741 (BAP 6th Cir. 1998) (parties' expectation of finality of the payment). In addition, the Bankruptcy Code and Congress favor compromises in bankruptcy proceedings to minimize litigation and expedite administration of the estate. *In re Martin*, 91 F.3d 389, 393 (3rd Cir. 1996) (citing 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)). As such, policy warrants this Court [ ] maintain the integrity of parties' good faith efforts to resolve their conflicts through settlement agreements.

*Schwab v. United States, IRS (In re Shop N' Go P'ship),* 261 B.R. 810, 816 (Bankr. M.D. Pa. 2001)

The Court agrees with the reasoning in *Schwab*, particularly with respect to the finality of settlements. In light of the foregoing, the Court finds that the Respondents reasonably relied on the Consent Order as a final fee award. This reliance was grounded in the facts that: (1) the Plan Trustee was aware of the estate's liquidity issues while negotiating the settlement but did not expressly reserve a disgorgement right, (2) the Consent Order was a final fee award and not interim, and (3) the Plan precluded the possibility of disgorgement in the event of a later conversion to chapter 7. Unlike the case with interim fee awards, it was not foreseeable that the Plan Trustee could come back to the Court at a later date and seek disgorgement from a final fee award. The Court approved the Consent Order absent language providing such a remedy. The Respondents should now, two and a half years later, be able to rely on the finality of the Order. Accordingly, the equities of the case dictate that the relief sought by the Plan Trustee be denied.

Page 10
June 30, 2011

## **CONCLUSION**

The Consent Order granting "allowed . . . final compensation for services rendered" and acknowledging prior receipt by the Respondents of sums certain "as full and final satisfaction" of the allowed fees was a final order. Final fee awards are not subject to disgorgement under 11 U.S.C. § 330(a)(5). Moreover, the requirements for granting relief from a final order under Rule 60 are not satisfied in this case. Finally, the equities of the case and the interest of finality weigh against granting the relief sought by the Plan Trustee. For the foregoing reasons, the motion is denied.

An Order in conformance with this Opinion has been entered by the Court and is attached hereto.

                                              Very truly yours,

                                              *s/ Donald H. Steckroth*

                                              DONALD H. STECKROTH
                                              UNITED STATES BANKRUPTCY JUDGE

Enclosure